IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| VERIZON CLINTON CENTER DRIVE CORP., <br> Plaintiff, <br> v. <br> EON CORPORATION, <br> Defendant. | C.A. No. <br><br> **DEMAND FOR JURY TRIAL** |

**COMPLAINT FOR DECLARATORY JUDGMENT**

Plaintiff Verizon Clinton Center Drive Corp. (f/k/a SkyTel, Inc., hereinafter "VCCDC") alleges as follows:

**INTRODUCTION**

1. This action seeks to vindicate VCCDC's rights to have offered for sale and sold certain products and services, in particular two-way communication networks and/or data systems that were based upon and/or used the ReFLEX protocol, a wireless data communications protocol developed by Motorola, Inc. VCCDC (a/k/a SkyTel Corp. or SkyTel Communications, Inc.) was selling the aforementioned products and services when it became a subsidiary of Verizon Communications Inc. in January 2006 as part of Verizon Communication Inc.'s acquisition of MCI, Inc. (f/k/a WorldCom). Despite the fact that (i) MCI, Inc. filed for protection under Chapter 11 of the Bankruptcy Code and emerged from bankruptcy in April 2005 unencumbered by any liability, and (ii) in January 2007, VCCDC sold substantially all its assets, including all the assets relating to the aforementioned products and services, to Bell Industries, Inc., the Defendant EON Corporation ("EON") and its allegedly related companies threaten VCCDC with liability under the patent laws.

## PARTIES

2. Plaintiff VCCDC is a corporation duly organized and existing under the laws of the State of Delaware, with its principal place of business at 22001 Loudoun County Parkway, Ashburn, VA 20147.

3. Defendant EON is a corporation duly organized and existing under the laws of the State of Delaware, with its principal place of business at 360 Herndon Parkway, Suite 900, Herndon, Virginia 20170.  Upon information and belief, EON's registered agent is the Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, DE 19801.

## JURISDICTION AND VENUE

4. This is an action arising under the United States patent laws, 35 U.S.C. § 1, *et seq.*, and under the Declaratory Judgment Act.  This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331, 1338(a), and 2201.

5. Venue is proper in this district pursuant to 28 U.S.C. §§ 1391(b) and (c) and 1400(b), because EON is incorporated and does business in the State of Delaware and EON is subject to personal jurisdiction in this district.

## FACTUAL BACKGROUND

6. On information and belief, EON is the assignee of all rights, title and interest in United States Patent No. 5,388,101 ("the '101 Patent"), titled "Interactive Nationwide Data Service Communication System for Stationary and Mobile Battery Operated Subscriber Units" and attached hereto as Exhibit 1.

7. On information and belief, based on assignment documents recorded with the United States Patent and Trademark Office ("PTO") and attached hereto as Exhibit 2, the '101

Patent was assigned by its sole listed inventor, Gilbert M. Dinkins, to TV Answer, Inc., from TV Answer, Inc. to TV Answer International, Inc., and from TV Answer International, Inc. to EON.

8.      On information and belief, EON is the assignee of all rights, title and interest in United States Patent No. 5,481,546 ("the '546 Patent"), titled "Interactive Nationwide Data Service Communication System for Stationary and Mobile Battery Operated Subscriber Units" and attached hereto as Exhibit 3.

9.      On information and belief, based on assignment documents recorded with the PTO and attached hereto as Exhibit 4, the '546 Patent was assigned by its sole listed inventor, Gilbert M. Dinkins, to EON.

10.     On information and belief, on September 26, 2008, EON Corp. IP Holdings, LLC was formed as a Texas limited liability company with its registered office located at 110 North College, 500 Plaza Tower, Tyler, TX 75702.

11.     On information and belief, EON Corp. IP Holdings, LLC has asserted that EON and EON Corp. IP Holdings, LLC are affiliated companies by virtue of common ownership and control.

12.     On September 29, 2008, EON Corp. IP Holdings, LLC filed a complaint for patent infringement against VCCDC in the United States District Court for Eastern District of Texas, attached hereto as Exhibit 5 (the "Texas Action"), alleging, in summary, that (1) EON Corp. IP Holdings, LLC was the "assignee of all rights, title and interest in and to the '101 Patent and/or '546 Patent [collectively, the "Patents-in-Suit"] and that it possessed all rights of recovery under the Patents-in-Suit, including the right to recover damages for past infringement" (Ex. 5, ¶¶ 25-26) and that (2) VCCDC "has been and is now infringing, directly and indirectly by way of inducement and/or contributory infringement, literally and/or under the doctrine of equivalents, the Patents-in-Suit in the Eastern District of Texas, the State of Texas, and elsewhere by making,

using, offering for sale, and/or selling two-way communication networks and/or data systems that fall within the scope of at least one claim of each of the Patents-in-Suit" (Ex. 5, ¶ 28).

      13.      On information and belief, at the time of filing the Texas Action, EON Corp. IP Holdings, LLC was not the assignee of all rights, title and interest in and to the Patents-in-Suit and did not possess all rights of recovery under the Patents-in-Suit, including the right to recover damages for past infringement.

      14.      VCCDC is filing concurrently herewith a Motion to Dismiss the Texas Action because EON Corp. IP Holdings, LLC lacked standing to bring that suit.

      15.      On information and belief, EON contends that VCCDC's certain products and/or services infringe the Patents-in-Suit. Therefore, a substantial controversy of sufficient immediacy and reality exists between VCCDC and EON as to whether any of VCCDC's products and/or services has infringed any valid and enforceable claims of any of the Patents-in-Suit to warrant the issuance of a declaratory judgment.

      16.      VCCDC desires a judicial determination of the foregoing controversy and a declaration by the Court of the parties' respective rights.

## FIRST COUNT
### (EON Claims Barred)

      17.      VCCDC repeats and realleges each allegation set forth in Paragraphs 1 through 16 as though fully set forth herein.

      18.      EON's claims that VCCDC's certain products and/or services infringe the Patents-in-Suit are barred, in whole or in part, pursuant to 11 U.S.C. §§ 101, *et seq*.

      19.      A judicial declaration that EON's claims are barred, in whole or in part, pursuant to Title 11 of the United States Code is necessary and appropriate at this time so that VCCDC can ascertain its rights and duties with respect to the products and/or services it formerly sold and/or offered to sell in the United States.

## SECOND COUNT
### (Declaratory Judgment of Non-Infringement)

20. VCCDC repeats and realleges each allegation set forth in Paragraphs 1 through 19 as though fully set forth herein.

21. VCCDC has not infringed and does not infringe any valid and enforceable claim of the '101 Patent, either directly or indirectly, literally, under the doctrine of equivalents, or otherwise.

22. VCCDC has not contributorily infringed or induced to infringe, and does not contributorily infringe or induce to infringe, any valid and enforceable claim of the '101 Patent.

23. A judicial declaration that VCCDC has not infringed and does not infringe the '101 Patent is necessary and appropriate at this time so that VCCDC can ascertain its rights and duties with respect to the products and/or services it formerly sold and/or offered to sell in the United States.

24. VCCDC has not infringed and does not infringe any valid and enforceable claim of the '546 Patent, either directly or indirectly, literally, under the doctrine of equivalents, or otherwise.

25. VCCDC has not contributorily infringed or induced to infringe, and does not contributorily infringe or induce to infringe, any valid and enforceable claim of the '546 Patent.

26. A judicial declaration that VCCDC has not infringed and does not infringe the '546 Patent is necessary and appropriate at this time so that VCCDC can ascertain its rights and duties with respect to the products and/or services it formerly sold and/or offered to sell in the United States.

## THIRD COUNT
### (Declaratory Judgment of Invalidity)

27. VCCDC repeats and realleges each allegation set forth in Paragraphs 1 through 26 as though fully set forth herein.

28. The '101 Patent is invalid under the provisions of 35 U.S.C. § 101, *et seq.*, including, without limitation, Sections 102, 103, and 112.

29. A judicial declaration that the '101 Patent is invalid because it fails to satisfy the conditions for patentability specified in Title 35 of the United States Code is necessary and appropriate at this time so that VCCDC can ascertain its rights and duties with respect to the products and/or services it formerly sold and/or offered to sell in the United States.

30. The '546 Patent is invalid under the provisions of 35 U.S.C. § 101, *et seq.*, including, without limitation, Sections 102, 103, and 112.

31. A judicial declaration that the '546 Patent is invalid because it fails to satisfy the conditions for patentability specified in Title 35 of the United States Code is necessary and appropriate at this time so that VCCDC can ascertain its rights and duties with respect to the products and/or services it formerly sold and/or offered to sell in the United States.

## FOURTH COUNT
### (Declaratory Judgment of Unenforceability)

32. VCCDC repeats and realleges each allegation set forth in Paragraphs 1 through 31 as though fully set forth herein.

33. The '101 Patent is unenforceable due to the doctrine of estoppel, EON's acts, failure to act, omissions, deceptive intent, and/or inequitable conduct during the prosecution of the '101 Patent application and/or related patent applications.

34. A judicial declaration that the '101 Patent is unenforceable is necessary and appropriate at this time so that VCCDC can ascertain its rights and duties with respect to the products and/or services it formerly sold and/or offered to sell in the United States.

35. The '546 Patent is unenforceable due to the doctrine of estoppel, EON's acts, failure to act, omissions, deceptive intent, and/or inequitable conduct during the prosecution of the '546 Patent application and/or related patent applications.

36. A judicial declaration that the '546 Patent is unenforceable is necessary and appropriate at this time so that VCCDC can ascertain its rights and duties with respect to the products and/or services it formerly sold and/or offered to sell in the United States.

37. In particular, individuals associated with the filing and prosecution of the '101 Patent and '546 Patent, including, without limitation, Gilbert M. Dinkins, the sole listed inventor, and/or his prosecuting attorney, committed inequitable conduct by breaching their duty to disclose information material to patentability of the '101 Patent and/or the '546 Patent.

38. In one instance of inequitable conduct, said individuals failed to disclose U.S. Pat. No. 4,659,878 (the "'878 Patent") and prior art cited therein. The '878 Patent lists Gilbert M. Dinkins as its sole inventor. The '878 Patent, entitled "Method And Apparatus For Interference Free Communications Between A Remote Handset And A Host Subscriber Unit In A Cellular Radio Telephone," issued on April 21, 1987, more than five years before the '101 Patent was filed on October 26, 1992, and more than seven years before the '546 Patent application was filed on May 10, 1994, and is therefore prior art to both the '101 Patent and the '546 Patent.

39. Just like the '101 Patent and/or the '546 Patent, the '878 Patent is directed to wireless communication networks, discloses and claims a similar subject matter, and therefore contains information material to the patentability of the claims of both the '101 Patent and the '546 Patent. For example, the '878 Patent discloses a two-way interactive communication

network wherein communications between a base station and an end user are facilitated through an intermediate device.

40. Upon information and belief, the information contained in the '878 Patent is not cumulative to the information that was before the Examiner during prosecution of the '101 Patent and the '546 Patent.

41. A reasonable examiner would have considered the information in the '878 Patent material in examining the claims of the '101 Patent and the '546 Patent because of the similarity of the subject matter of the '878 Patent relative to the claims of the '101 Patent and the '546 Patent.

42. As the sole listed inventor of both the '101 Patent and the '546 Patent as well as the '878 Patent, Mr. Dinkins knew that the '878 Patent issued before the filing of either the '101 Patent and the '546 Patent and, given the similarity in the information described, knew or should have known that the '878 Patent was material to the patentability of the claims of the '101 Patent or the '546 Patent.

43. The individuals associated with the filing and prosecution of the '101 Patent and the '546 Patent, including, without limitation, Gilbert M. Dinkins, the sole listed inventor, and/or his prosecuting attorney, did not exercise their duty of candor and good faith in dealing with the PTO by withholding the '878 Patent and otherwise failing to disclose it to the PTO. Upon information and belief, Mr. Dinkins and/or his prosecuting attorney withheld and failed to disclose the '878 Patent during the prosecution of the '101 Patent and '546 Patent knowingly and with an intent to deceive the PTO to obtain issuance of the '101 Patent and the '546 Patent.

44. The knowing failure to disclose the '878 Patent with an intent to deceive the PTO represents one instance of inequitable conduct rendering both the '101 Patent and the '546 Patent unenforceable.

45. In another instance of inequitable conduct, individuals associated with the filing and prosecution of the '101 Patent and the '546 Patent, including, without limitation, Gilbert M. Dinkins, the sole listed inventor, and/or his prosecuting attorney, failed to disclose an International Search Report ("ISR") for a Patent Cooperation Treaty ("PCT") counterpart of the '101 Patent, WO 94/10803. The WO 94/10803 PCT application includes a set of claims similar to the claims of the '101 Patent. In the ISR, a PCT patent examiner identified a number of prior art references, including U.S. Pat. Nos. 4,750,036 and 4,928,177, which were marked as "Y" references, denoting prior art of "particular relevance" that rendered the claims of the WO 94/10803 PCT application obvious.

46. Upon information and belief, the references and information contained in the ISR are not cumulative to the information that was before the Examiner during prosecution of both the '101 Patent and the '546 Patent.

47. A reasonable examiner would have considered the information in the ISR and/or prior art references cited therein material in examining the claims of the '101 Patent and the '546 Patent at least because of the similarity of the subject matter of the prior art references cited in the ISR to the subject matter of the claims of the '101 Patent and the '546 Patent, and also because a PCT patent examiner had already determined that those prior art references rendered a similar set of claims obvious.

48. Upon information and belief, the ISR was mailed to the prosecuting attorney of the '101 Patent and the '546 Patent on March 30, 1994, prior to the issuance of the '101 Patent and prior to the filing of the '546 Patent. Thus, at least the prosecuting attorney of the '101 Patent and the '546 Patent knew or should have known that the ISR and the references listed therein were material to the patentability of the claims of both the '101 Patent and the '546 Patent.

49. The individuals associated with the filing and prosecution of the '101 Patent and the '546 Patent, including, without limitation, their prosecuting attorney, did not exercise their duty of candor and good faith in dealing with the PTO by knowingly withholding the ISR and otherwise failing to disclose it to the PTO with an intent to deceive the PTO to obtain issuance of the '101 Patent and the '546 Patent.

50. The knowing failure to disclose the ISR and the prior art references cited therein with an intent to deceive the PTO represents another instance of inequitable conduct rendering the '101 Patent and the '546 Patent unenforceable.

51. In yet another instance of inequitable conduct, the individuals associated with the filing and prosecution of the '101 Patent and the '546 Patent, including, without limitation, Gilbert M. Dinkins, the sole listed inventor, and/or their prosecuting attorney failed to disclose—in connection with the prosecution of the '546 Patent—information material to its patentability that became known to said individuals in connection with the prosecution of co-pending, related patent applications.

52. More specifically, during the prosecution of Pat. App. Ser. No. 08/240,883 (the "'833 Application"), a PTO examiner cited U.S. Pat. No. 4,482,895 (the "'895 Patent") as "pertinent to applicant's disclosure." The '833 Application is a divisional application related to the '101 Patent and '546 Patent applications and claimed a similar subject matter. The '833 Application listed Gilbert M. Dinkins as its sole inventor. The '895 Patent, entitled "Multi-Channel Micropower Communication Link," issued on November 13, 1984, several years before the '546 Patent application was filed, and is therefore prior art to the '546 Patent.

53. Just like the '546 Patent, the '895 Patent is directed to wireless communications, discloses and claims a similar subject matter, and therefore contains information material to the patentability of the claims of the '546 Patent. For example, it discloses a transmitter/receiver

employing suitable microchip circuitry to pulse modulate a transmitted (*e.g.*, radio frequency) signal and to demodulate the received signal to detect for a selected pulse width in the transmitted signal, thereby enabling coding of selected channels.

54. Upon information and belief, the information contained in the '895 Patent is not cumulative to the information that was before the Examiner during prosecution of the '546 Patent.

55. A reasonable examiner would have considered the information in the '895 Patent material in examining the claims of the '546 Patent because of the similarity of the subject matter of these two patents.

56. Upon information and belief, an Office Action citing the '895 Patent was mailed to the prosecuting attorney of the '546 Patent on February 27, 1995, prior to the issuance of the '546 Patent. Thus, at least the prosecuting attorney of the '546 Patent knew or should have known that the '895 Patent was material to the patentability of the claims of the '546 Patent.

57. The individuals associated with the filing and prosecution of the '546 Patent, including, without limitation, its prosecuting attorney, did not exercise their duty of candor and good faith in dealing with the PTO by knowingly withholding the '895 Patent and otherwise failing to disclose it to the PTO with an intent to deceive the PTO to obtain issuance of the '546 Patent.

58. The knowing failure to disclose the '895 Patent and the prior art references cited therein with an intent to deceive the PTO represents another instance of inequitable conduct rendering the '546 Patent unenforceable.

59. In yet another instance of inequitable conduct, during the prosecution of Pat. App. Ser. No. 08/348,618 (the "'618 Application"), a PTO examiner rejected a number of its claims over U.S. Pat. Nos. 5,282,204 and 5,444,698 (the "'204 and '698 Patents"). The '618

Application was a divisional application related to the '101 Patent and '546 Patent applications and claimed a similar subject matter. The '618 Application listed Gilbert M. Dinkins as its sole inventor. Both the '204 and '698 Patents were filed before the '546 patent application was filed and are therefore prior art to the '546 Patent.

60. Just like the '546 Patent, the '204 and '698 Patents are directed to wireless communications, describe and claim a similar subject matter, and therefore contain information material to the patentability of the claims of the '546 Patent. For example, the '204 Patent discloses an apparatus and method for overlaying data on trunked radio comprising the steps of transmitting data from a local base station repeater cell to a modem communicatively coupled to the local base station repeater cell and transmitting the data received by the modem to a subscriber unit communicatively coupled to the modem. The '698 Patent discloses a mobile radio communication system.

61. Upon information and belief, the information contained in the '204 and '698 Patents is not cumulative to the information that was before the Examiner during prosecution of the '546 Patent.

62. A reasonable examiner would have considered the information in the '204 and/or '698 Patents material in examining the claims of the '546 Patent at least because of the similarity of the subject matter of these patents.

63. Upon information and belief, an Office Action citing the '204 and '698 Patents was mailed to the prosecuting attorney of the '546 Patent on September 26, 1995, prior to the issuance of the '546 Patent. Thus, at least the prosecuting attorney of the '546 Patent knew or should have known that the '204 and '698 Patents were material to the patentability of the claims of the '546 Patent.

64. The individuals associated with the filing and prosecution of the '546 Patent, including, without limitation, its prosecuting attorney, did not exercise their duty of candor and good faith in dealing with the PTO by knowingly withholding the '204 and '698 Patents and otherwise failing to disclose them to the PTO with an intent to deceive the PTO to obtain issuance of the '546 Patent.

65. The knowing failure to disclose the '204 and '698 Patents and the prior art references cited therein with an intent to deceive the PTO represents another instance of inequitable conduct rendering the '546 Patent unenforceable.

## DEMAND FOR JURY TRIAL

66. Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, VCCDC demands a trial by jury of all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, VCCDC respectfully prays for the following relief:

a) That the Court find and enter a judgment declaring that EON's claims that VCCDC's products and/or services infringe or have infringed the Patents-in-Suit are barred, in whole or in part, pursuant to Title 11 of the United States Code;

b) That the Court find and enter a judgment declaring that no claim of the '101 Patent is infringed or has been infringed by VCCDC;

c) That the Court find and enter a judgment declaring that the '101 Patent is invalid;

d) That the Court find and enter a judgment declaring that the '101 Patent is unenforceable;

e) That the Court find and enter a judgment declaring that no claim of the '546 Patent is infringed or has been infringed by VCCDC;

f) That the Court find and enter a judgment declaring that the '546 Patent is invalid;

g)   That the Court find and enter a judgment declaring that the '546 Patent is unenforceable;

h)   That the Court award costs to VCCDC in accordance with 35 U.S.C. § 284;

i)   That the Court declare VCCDC's case to be exceptional and award VCCDC its attorneys' fees and expenses against EON under 35 U.S.C. § 285; and

j)   That the Court award VCCDC any other relief the Court may deem just, equitable, and proper.

ASHBY & GEDDES

*/s/ John G. Day*

_____
John G. Day (I.D. #2403)
Lauren E. Maguire (I.D. #4261)
Caroline Hing (I.D. #5189)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE 19899
302-654-1888
jday@ashby-geddes.com
lmaguire@ashby-geddes.com
chong@ashby-geddes.com

*Attorneys for Plaintiff Verizon Clinton Center Drive Corp.*

*Of Counsel:*

Henry B. Gutman
Victor Cole
SIMPSON THACHER & BARTLETT
425 Lexington Avenue
New York, New York 10017-3954
Telephone: (212) 455-2000
Facsimile:  (650) 455-2502
hgutman@stblaw.com
vcole@stblaw.com

Jeffrey E. Ostrow
SIMPSON THACHER & BARTLETT
2550 Hanover Street
Palo Alto, California 94303
Telephone: (650) 251-5000
Facsimile: (650) 250-5002
jostrow@stblaw.com


Dated:  November 2, 2009